JOVAN WILLIAMS,

                Plaintiff,

v.                                          Case No. 19-cv-1659-pp

BRIAN FOSTER, ANTHONY MELI,
S. WIERENGA, J. KACYON,
JOHN DOE SERGEANTS, J. WESTRA,
ERICA DERKSEN, CO BERKLEY
JOHN DOE SECURITY SUPERVISORS,
CO ADDERTON, CO SMITH,
TODD RUSSELL, ANASTAISA HUBER,
JOHN AND JANE DOES, CRYSTAL MARCHANT,
JEFFERY MANLOVE, GWENDOLYN A. VICK,
TORRIA VAN BUREN, and MARIETA WOJTECKA,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Jovan Williams, who is confined at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and his motion to amend his complaint, dkt. no. 7, and screens his complaint, dkt. no. 1.

### I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 12, 2019, the court found that the plaintiff had neither the assets or means to pay an initial partial filing fee. Dkt. No. 5 at 2. The court gave the plaintiff until December 3, 2019, to inform the court if he wanted to voluntarily dismiss his case to avoid the risk of incurring a strike. About a week later, the plaintiff wrote a letter to the court stating that he would like to proceed with his case. Dkt. No. 8. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the $350 filing fee over time in the manner explained at the end of this order.

## II.     Motion to Amend the Complaint

Less than a week after the plaintiff filed his complaint, he filed a "Motion for Leave to File an Amended Complaint." Dkt. No. 7. The plaintiff seeks to correct an error in one paragraph of his original complaint. He explains that in paragraph 31 of his complaint he alleged that, on July 1, 2018, he cut his wrist and overdosed on pills. Id. at 1 (referencing Dkt. No. 1 at ¶31). He explains that he did not overdose or threaten to overdose on that day. Id. Instead, he alleges that he twice told defendant Derksen that he was going to harm himself with a sharp metal object. Id. He further alleges that she acknowledged his statements but did not take the object away from him. Id. She allegedly told him that she didn't have time for that because she was on her way home; she then walked away. Id. The plaintiff alleges that he cut himself, covered his door

2

window in blood and fainted. Id. He asserts that he received care for his wound for several days. Id.

Generally, the court does not allow a plaintiff to file piecemeal pleadings; it requires the plaintiff to put all his allegations in a single document. This is because it can be too confusing for the defendants to keep track of the allegations against them if the allegations are spread out over successive filings. Because that the plaintiff seeks to correct a single detail in a single paragraph, however, the court will grant his motion to amend and will not require him to file a new complaint to make this correction. For the reasons explained in this order, the court will require the plaintiff to file an amended complaint if he wants to proceed; the plaintiff's correction does not affect that decision.

**III.   Screening the Complaint**

   A.   Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

3

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds their complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff seeks to bring several unrelated claims against fifteen named defendants and an unspecified number of John and Jane Doe defendants. The court will organize his allegations by claim.

    1. *Due Process and Conditions of Confinement Based on Excessive Penalties, Extended Time in Segregation and Loss of Recreation Privileges while in Segregation*

According to the plaintiff, Division of Adult Institutions (DAI) Policy 303.00.04 (which the plaintiff does not include with his complaint) sets forth a "base penalty" for every rule violation. Dkt. No. 1 at ¶22. The plaintiff alleges that, following a rule violation, defendants Foster, Wierenga, Meli and Westra

4

had been offering him and other inmates a penalty that is greater than the "base penalty." Id. The plaintiff states that, as a result, he and other inmates are denied the protection offered by chapter 303 of the Wisconsin Administrative Code, which (the court gathers) also details the "base penalty" for every rule violation. Id. The plaintiff explains that, if he does not accept the penalty offered by the security director, he will be sentenced by defendant Westra, who is the hearing officer. Id.

The plaintiff does not include details about the rule violations he committed, the base penalties for those violations set forth in the policy and/or administrative code, the penalty offered to him or the penalty he received. The plaintiff asserts that he and other inmates have lost out-of-cell recreation for long periods, but he does not explain if a penalty of that nature (versus amount of segregation time generally) is addressed by the policy and/or administrative code.

The plaintiff alleges that he was in a segregation cell 24 hours a day, seven days a week, with the exception of time for showers, law library and medical appointments, from January 31, 2018, through August 5, 2018 (a total of six months and five days). Dkt. No. 1 at ¶23. He explains that the cell he was "confined in most of the time was with no human contact, no radio, and the only thing [he could] see when [he] looked out of both cells windows were a solid white and concrete wall, with excessive noise." Id. at ¶24. According to the plaintiff, defendants Foster, Wierenga, Westra and Meli approved the loss of out-of-cell recreation for long periods. Id. at ¶25.

The plaintiff alleges he suffered injuries such as migraine headaches, back pains, neck pains, stomach cramps, cuts, constipation problems,

5

insomnia (for which he was prescribed psychotropic medication) and deterioration of his mental health. Id. at ¶28.

### 2. *Deliberate Indifference Based on Inadequate Mental Health Care*

According to the plaintiff, defendants Van Buren and Wojtecka provided him with inadequate mental health treatment. Dkt. No. 1 at ¶26. The plaintiff alleges that his extended time in segregation resulted in his mental health deteriorating. Id. at ¶28. As an example, he explains that on June 23, 2018, he was placed in clinical observation after he cut himself because of delays in receiving treatment and because he had been deprived of out-of-cell recreation for so long. Id. at ¶27. He also generally alleges that he overdosed and engaged in self-harm. Id. at ¶28. The plaintiff states that he was placed in clinical observation on September 18, 2018, because he felt "overwhelmed by these conditions," but according to the dates the plaintiff previously alleged, he was already out of segregation by then. Id. at ¶¶27, 23.

The plaintiff alleges that he "repeatedly requested mental health treatment," but defendants Van Buren and Wojtecka "discriminated against [him] by creating a Behavior Management Plan that h[i]ndered [him] from getting any treatment due to [his] history with female staff members at this facility." Id. at ¶35. The plaintiff explains that he requested that he "be assigned to a professional license male psychologist because of [his] history with female staff members" but Van Buren and Wojtecka refused to make the assignment. Id. at ¶¶40-41.

The plaintiff also asserts that in October 2019, he "once again repeatedly asked for mental health treatment without anymore delays . . . ." Id. at ¶36. He states that, in response, Van Buren and Doe psychologist staff members placed

him in clinical observation "under harsh conditions." Id. The plaintiff states that he acted out, was punished and had mental breakdowns. Id.

### 3. *Deliberate Indifference Based on Failure to Protect the Plaintiff from Self-Harm*

The plaintiff catalogs a series of self-harm incidents involving different correctional officers. First, the plaintiff asserts that on February 19, 2018, defendant Russell was doing a wellness check when the plaintiff informed him that he was suicidal and was going to overdose on pills. Dkt. No. 1 at ¶29. The plaintiff asserts that Russell stated, "That's what I stopped for," and then walked away. Id. The plaintiff asserts that he swallowed a lot of pills, pressed his emergency call button and was sent to the hospital for treatment. Id.

Next, the plaintiff asserts that on March 4, 2018, he told defendant Smith several times that he planned to overdose on pills and toothpaste. Id. at ¶30. He states that he overdosed in front of Smith, but Smith ignored him. Id. According to the plaintiff, he told other staff what he had done, and he was taken to the hospital for treatment. Id.

Next, the plaintiff asserts that on July 1, 2018, he cut himself (his original complaint says that he also overdosed, but the plaintiff corrected his pleading and removed that allegation). Dkt. No. 7 at ¶ 3. According to the plaintiff, he showed defendant Derksen a sharp object two times and asked her to take it away, but she declined, saying, "Really. Now. I don't have time for this, I'm about to go home." Id. The plaintiff states that she walked away to finish her mail pickup. Id. The plaintiff asserts that he cut himself, covered his cell window in blood and fainted. Id. According to the plaintiff, the next shift security staff found him. Id. He asserts that he had to receive treatment for his wound for several days. Id.

Next, the plaintiff alleges that, on August 8, 2018 (three days after he was released from segregation, see dkt. no. 1 at ¶23), he cut himself and overdosed on pills. Id. at ¶ 32. The plaintiff states that he told defendants Adderton, Berkley, Vick and correctional officer John Doe that he was suicidal and was going to overdose on pills. Id. The plaintiff asserts that he swallowed a lot of pills in front of Berkley. Id. According to the plaintiff, Berkley notified supervisor John Doe and sergeant John Doe, but correctional officer John Doe told her to walk away, which she did. Id. The plaintiff asserts that he then cut himself. Id. He states that someone pulled him out of his cell, but that Vick refused to provide him with medical treatment. Id. The plaintiff asserts that supervisor John Doe, sergeant John Doe and Marchant were made aware of the situation, but they did nothing to address it. Id.

Next, the plaintiff alleges that, on September 20, 2018 (after the plaintiff was released from segregation, see dkt. no. 1 at ¶23), he cut himself while he was in clinical observation in front of defendants Huber, correctional officers John Does and sergeants John Does. Id. at ¶ 33. He asserts that they all denied him medical treatment. Id.

### 4. *Deliberate Indifference Based on Inadequate Medical Treatment*

The plaintiff alleges that defendants Marchant and Manlove were aware of his extensive history of overdosing by swallowing pills. Id. at ¶34. The plaintiff states that, despite this knowledge, they refused to put him on a crushed medications restriction, instead requiring that security staff distribute medications to him. Id. (The plaintiff acknowledges that he has "a history with female staff members at this facility." Id. at ¶35.) The plaintiff alleges that ultimately, Marchant and Manlove canceled his prescriptions for his severe

migraine headaches—presumably because he persisted in abusing his medication. Id. at ¶34.

    C.    <u>Analysis</u>

Federal Rule of Civil Procedure 18(a) states that "[u]nrelated claims against different defendants belong in different suits," thereby preventing prisoners from avoiding the fee payment or three strikes provisions in the PLRA. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Under that rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." <u>Id.</u> Further, under Fed. R. Civ. P. 20, a plaintiff can join multiple defendants in one case only if the claims he states against them arise out of the same events or incidents and there are questions of law or fact that will be common to all the defendants in the case.

The plaintiff's complaint violates Rules 18 and 20. The plaintiff's attempt to connect all his claims by alleging that they occurred during or as a result of his lengthy stay in segregation misses the mark. A closer look at each of his claims reveals that the questions of law and fact that will apply to one set of defendants will not be the same as the questions of law or fact that apply to another set of defendants, regardless of whether the claims arose while the plaintiff was in segregation.

For example, the plaintiff claims that Foster, Wierenga, Meli and Westra violated his rights under the Eighth and Fourteenth Amendments when they punished him with a lengthy stay in segregation during which he was denied access to out-of-cell recreation. The facts giving rise to these claims and the law the court will consider when determining whether the plaintiff may proceed with these claims will have nothing in common with the facts and law relevant

9

to his proposed claim that Marchant and Manlove violated the Eighth Amendment when they refused to put him on a crushed medications restriction and ultimately canceled his prescription to treat his migraines.

The plaintiff has tried to cram multiple cases into one case. Rules 18 and 20 prohibit him from doing that, so he cannot proceed with his complaint in its current form. The court will allow the plaintiff to file an amended complaint that pursues related claims against one set of defendants. He can refer to the court's breakdown of his claims earlier in this decision as a guide as to which claims in his complaint are related. The plaintiff may pursue unrelated claims against different sets of defendants if he wants to, but he must do so in separate cases, and he must pay a filing fee (over time as permitted under the PLRA) for every case he files. Also, as required by the PLRA, the court will screen every complaint he files.

As the plaintiff considers which related claims he would like to pursue, the court reminds him that his allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). For example, a conclusory statement such as, "The defendants provided inadequate mental health treatment" is insufficient on its own to state a claim. The plaintiff must provide the court with specific facts showing what health treatment was provided by which defendants and why it was inadequate.

The court is enclosing a copy of its complaint form and instructions. The plaintiff must select which of the above claims against which defendants

10

he wants to pursue in this case. Then he must write the word "Amended" at the top of the first page of the form, before the word "Complaint." He must list the case number for this case (19-cv-1659) on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations he alleges they committed. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint. Instead, he must repeat in the amended complaint the facts from the original complaint that are necessary to his claims. The plaintiff must follow this same process for each lawsuit he wishes to file.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint violates Fed. R. Civ. P. 18 and 20. Dkt. No. 1.

The court **GRANTS** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 7.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by the end of the day on **August 14, 2020**. If the plaintiff files an amended complaint by the deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not file an amended complaint by the

11

deadline, the court will dismiss this case based on the plaintiff's failure to comply with Fed. R. Civ. P. 18 and 20.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $350 filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin this 2nd day of July, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**