JOVAN WILLIAMS,

                Plaintiff,

    v.                                      Case No. 19-cv-1659-pp

BRIAN FOSTER, ANTHONY MELI,
S. WIERENGA, J. WESTRA,
TORRIA VAN BUREN, and
MARIETA WOJTECKA,

                Defendants.

## ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 14)

Jovan Williams, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. On July 2, 2020, the court screened his complaint and found that it violated Federal Rules of Civil Procedure 18 and 20. Dkt. No. 12. The court gave the plaintiff an opportunity to file an amended complaint; he did so, and the court received the amended complaint on July 22, 2020. Dkt. No. 14. This order screens the plaintiff's amended complaint as required by the Prison Litigation Reform Act. 28 U.S.C. §1915A.

## I.    Screening the Complaint

###     A.    Federal Screening Standard

As the court explained in its original screening order, it must dismiss a complaint or portions of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

1

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading standard, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

The court construes liberally complaints filed by plaintiffs who are representing themselves and holds those complaints to a less stringent standard than pleadings drafted by lawyers. Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015).

B.    The Plaintiff's Allegations

The plaintiff explains that Division of Adult Institution (DAI) Policy 303.00.04, which the plaintiff attached to his amended complaint, sets a "base penalty" for every rule violation. Dkt. No. 14 at 3; Dkt. No. 14-1 at 1-3. The plaintiff asserts that defendants Brian Foster, S. Wierenga, Anthony Meli and J. Westra excessively punished him for various violations. Dkt. No. 14 at 3. In an attachment to his complaint, the plaintiff details the violations he says the defendants punished him for; the attachment sets forth the date he was found guilty, the violation he was found guilty of, and the penalties. Dkt. No. 14-1 at

2

4-5. The court often cannot tell which defendant allegedly convicted him; the plaintiff often says only that he "was convicted."

The plaintiff's attachment lists the following violations and penalties:

- January 31, 2019, a conviction for violating DOC Admin. §§303.14 (sexual conduct) and 303.28 (disobeying orders); he says that Westra, Wierenga and Foster gave him a disposition of 210 days' disciplinary separation and ninety days' loss of recreation.
- March 2, 2018, a conviction for violation DOC Admin. §§303.39 (misuse of state or federal property), 303.28(1) (disobeying orders) and 303.29 (disrespect); he says that Westra and Foster gave him a disposition of sixty days' disciplinary segregation and thirty days' loss of recreation;
- March 12, 2018, a conviction for violating DOC Admin. §303.14 (sexual conduct); he says that Foster and Wierenga gave him a disposition of 210 days' disciplinary separation and 105 days' loss of recreation.
- On April 20, 2018, a conviction for violation DOC Admin. §§303.14 (sexual conduct), 303.28 (disobeying orders) and 303.58 (misuse of medication); he says that Wierenga "& Security Director" gave him a disposition of 180 days' disciplinary separation and forty-five days' loss of recreation.
- On May 4, 2018, a conviction for violation of DOC Admin. §§303.29 (disrespect), 303.33 (disruptive conduct) and 303.39 (misuse of state or federal property); he says that Westra and Foster gave him a disposition of 210 days' disciplinary separation and 105 days' loss of recreation.
- On May 7, 2018, a conviction for DOC Admin. §§303.13 (assault on an employee) and 303.33 (disruptive conduct); he says that Westa, Wierenga and Foster gave him a disposition of 180 days' disciplinary separation and ninety days' loss of recreation.
- On July 11, 2018, a conviction for violation DOC Admin. §303.33 (disruptive conduct); he says that "the security director" gave him thirty days' loss of recreation.
- On August 8, 2018, a conviction for violation DOC Admin. §303.14 (sexual conduct) and 303.29 (disrespect); he says "the security director under the authority of defendant Meli" gave him a disposition of 150 days' disciplinary separation and thirty days' loss of recreation, "which was approved by defendant Wierenga."
- On August 24, 2018, a conviction for violation DOC Admin. §303.14 (sexual conduct); he says that Westra and Foster gave him a disposition of 210 days' disciplinary separation and 105 days' loss of recreation.

- On September 26, 2018, a conviction for violating DOC Admin. §§303.18 (threats), 303.28 (disobeying orders), 303.29 (disrespect) and 303.33 (disruptive conduct); while he uses the plural "defendants," he names only Westra as giving him a disposition of 120 days disciplinary separation and sixty days' loss of recreation.
- On December 13, 2018, a conviction for violating DOC Admin. §§303.14 (sexual conduct) and 303.28 (disobeying orders); he says that Westra and Wierenga gave him a disposition of 150 days' disciplinary separation and seventy-five days' loss of recreation.
- On January 24, 2019, a conviction for violation DOC Admin. §§303.19 (stalking), 303.30 (soliciting an employee) and 303.39 (misuse of federal or state property); he again uses the plural "defendants," but mentions only Westra as having given him a disposition of ninety days' disciplinary segregation and forty-five days' loss of recreation.
- On April 3, 2019, a conviction for violation DOC Admin. §303.58 (misuse of medication); he says that Meli gave him a disposition of thirty days' loss of recreation.
- Again on April 3, 2019, a conviction for violations of DOC Admin. §§303.14 (sexual conduct) and 303.28 (disobeying orders); he says that Westra and Foster gave him a disposition of 210 days' disciplinary separation and 105 days' loss of recreation.
- On April 29, 2019, a conviction for violating DOC Admin. §§303.14 (sexual conduct), 303.28 (disobeying orders) and 303.30 (soliciting an employee); he says that Westra and Wierenga originally gave him a disposition of 150 days' disciplinary separation and seventy-five days' loss of recreation, but that Foster then "dropped" the disposition to 120 days' disciplinary separation and sixty days' loss of recreation.

Dkt. No. 14-1 at 4-5.

The plaintiff explains that, generally, if he didn't accept whatever penalty was offered by the security director, Westra (the hearing officer) would sentence him. Dkt. No. 14 at 3. He alleges that Wierenga would approve the disposition, and that Foster would deny the plaintiff's appeals. Id.

The plaintiff asserts that "DOC/DAI Policy 303" isn't even given to the inmates, including himself. Id. at 4. He alleges that an inmate must "either accept the penalty offered to him or the penalty he received by Westra." Id. According to the plaintiff, he lost out-of-cell recreation for long periods of time

4

even though his violations should have carried a penalty of no more than eight days' lost recreation time and zero to ninety days of disciplinary separation. Id. The plaintiff says he was in a segregation cell for twenty-four hours a day, seven days a week from January 31, 2018 through June 29, 2019. Id. The plaintiff asserts that the only times he was let out of his cell during that period were for showers, law library, medical appointments and observation placements. Id. (The plaintiff does not clarify how often these events occurred or how long he was out of his cell during one of these events.)

The plaintiff also explains that his segregation cell was at the end of the range with no human contact and no radio. Id. He asserts that the only thing he could see when he looked out of his cell's windows was a solid white concrete wall. Id. He also alleges that the range was excessively noisy throughout the day and night. Id. at 4-5. The plaintiff asserts that he was never allowed to attend out-of-cell recreation with other inmates even though none of his violations involved misbehaving during out-of-cell recreation. Id. at 5. He alleges that the penalties Foster, Wierenga, Meli and Westra gave him were very harsh. Id.

The plaintiff explains that, as a result of the isolation, he began to suffer migraine headaches, back and neck pain, stomach cramps, "cuts," constipation and insomnia (for which he was prescribed psychotropic medication). Id. The plaintiff also asserts that his mental health deteriorated, and he began to self-harm. Id. According to the plaintiff, defendants Torria Van

5

Buren and Marieta Wojtecka did not treat his mental health condition. Id. The plaintiff provides two examples of their failure to treat him. Id.

First, the plaintiff asserts that, on June 23, 2018, he was placed on observation status after he cut himself (it is not clear who placed him on observation status). Id. The plaintiff explains that he cut himself because of delays in receiving treatment and because he had been denied out-of-cell recreation for so long. Id. He says he also "generally overdosed and engaged in self-harm." Id.

Second, the plaintiff says, on September 18, 2018, when he felt overwhelmed "by these conditions," Van Buren and Wojtecka denied his repeated requests for mental health treatment. Id. The plaintiff alleges that they wrote "an unlawful Behavior Management Plan," which hindered him from getting treatment. Id. The plaintiff explains that he has a history with female staff members at Waupun Correctional Institution, so he requested to be treated by a male psychologist. Id. at 6. Van Buren and Wojtecka allegedly refused to make the assignment. Id. The plaintiff states "all of this caused him to act out." Id. He says he was punished and had mental breakdowns. Id. He asserts that he needed treatment for his major depression and other diagnoses. Id.

The plaintiff explains that out-of-cell recreation while in segregation is a basic human need, necessary for physical and mental well-being and required under the Eighth Amendment. Id. He also asserts that he is entitled to adequate mental health care because without it he is vulnerable to self-harm

and bad coping actions. Id. The plaintiff explains that Van Buren and Wojtecka refused to send him to Wisconsin Resource Center for "stability programming, for coping skill(s) program[m]ing, or any other program[m]ing that the plaintiff needs." Id. The plaintiff alleges Van Buren and Wojtecka purposely assessed him as a MH-1 instead of a MH-2A so they wouldn't have to give him the mental health care he needs. Id. The plaintiff explains that the only treatments he has received are occasional "packets," which he receives through his mail slot. Id. at 7.

The plaintiff asserts that the effects of long-term solitary confinement are well known and that he suffered mental deterioration and breakdowns as a result of the defendants' actions. The plaintiff seeks a declaratory judgment, compensatory damages and punitive damages. Id. at 8.

C. Analysis

The plaintiff does not allege that he did not commit the violations for which he was convicted. He concedes that he "acted out." Nor does he allege that he was punished without due process; he references receiving notice of the violations with which he was charged (presumably in a conduct report), a determination by a hearing officer and an appeal procedure. Instead, the plaintiff's amended complaint focuses on the suffering he endured as a result of losing his out-of-cell recreation privileges, which is one of the penalties that Foster, Meli, Wierenga and/or Westra allegedly imposed or approved after he was found guilty of having committed various violations. The plaintiff argues that having to stay in disciplinary segregation twenty-four hours a day, seven

7

days a week for nearly a year and a half without any out-of-cell recreation violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

In Pearson v. Ramos, the Seventh Circuit analyzed a claim like the one the plaintiff seeks to bring against Foster, Meli, Wierenga and Westra. 237 F.3d 881 (7th Cir. 2001). Pearson sought damages for harm that he claimed to have suffered as a result of being denied access to out-of-cell recreation for an entire year. Id. at 883. While inmates who had been in segregation for more than ninety days were allowed out-of-cell recreation for five hours per week, inmates could be punished for serious infractions of prison rules with a ninety-day loss of out-of-cell recreation. Id. Pearson had committed four serious infractions within six months and was punished for each one with a ninety-day denial of out-of-cell recreation. Id. These sentences ran consecutively or were "stacked" so that Pearson ended up being denied out-of-cell recreation for an entire year.

The Seventh Circuit made key findings that apply to this case. The court began by explaining that, generally, "[w]e think it a reasonable rule that denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual." Id. at 884. It acknowledged that "a norm of proportionality" exists such that "imposing a 90-day denial of yard privileges for some utterly trivial infraction" could run afoul of the Eighth Amendment. Id. at 885. The court noted, however, that the infractions committed by Pearson were not trivial.

The court further explained that it did not understand Pearson to be complaining that each withdrawal of out-of-cell privileges was an excessive

sanction for the violation he had committed. Id. Instead, Pearson appeared to be asking that the court consider the cumulative punishment of one year of no out-of-cell recreation. Id. The court explained that, even if it were to do that, it could not find that the penalty was cruel and usual. Id. The Seventh Circuit explained that Pearson had committed four serious infractions within six months, marking him as violent and incorrigible. Id. It held that "[p]reventing access to the yard was a reasonable method of protecting the staff and the other prisoners from his violent propensities." Id.

According to the Seventh Circuit, under those circumstances, "[a]ny objection to the punishment based on considerations of proportionality thus dissolves and leaves for consideration only whether the denial of yard privileges for a year does so much harm to a prisoner that it is intolerable to the sensibilities of a civilized society no matter what the circumstances." Id. The court said, "[t]he answer is no." Id.

Finally, the court clarified that, in any event, "it is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequences of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim." Id. at 886. The court held that "[e]very disciplinary sanction, like every sentence, must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual." Id.

Here, the plaintiff asserts that from the end of January 2018 until April 2019, he was found guilty on fifteen different occasions of more than thirty violations. All the violations were classified as "Major Infractions" under the

policy the plaintiff attached to the amended complaint. His violations included disobeying orders, disruptive behavior, assault on an employee, sexual conduct and stalking. The defendants approved a sanction of loss of out-of-cell recreation for ninety days or less on eleven of the fifteen occasions. Dkt. No. 14-1 at 4-5. On the other four occasions, the defendants approved a loss of out-of-cell recreation for 105 days. Id.

Under Pearson, the plaintiff cannot state a claim against Foster, Meli, Wierenga or Westra based on his assertion that denying him out-of-cell recreation amounted to cruel and unusual punishment under the Eighth Amendment. Pearson held that courts should look at each sanction separately, not cumulatively, so the court must consider each of the fifteen sanctions on its own without regard to the fact that the sanctions stacked up over time for a cumulative total of eighteen months. Pearson also held that sanctioning a prisoner for a non-trivial infraction with up to ninety days of loss of out-of-cell recreation does not violate the Eighth Amendment. As noted, eleven of the fifteen sanctions were for ninety days or less. Because these sanctions were imposed for non-trivial violations, they cannot support a claim under the Eighth Amendment.

That leaves four sanctions of 105 days of loss of out-of-cell recreation, fifteen days more than the ninety-day rule set in Pearson. The Seventh Circuit stated that, even if it considered that Pearson had lost his out-of-cell recreation privileges for a full year, it could not conclude that such a penalty was cruel and unusual. The court considered the fact that Pearson had committed four

serious violations in the span of six months and determined that the prison's decision to keep him away from staff and others was a reasonable way of protecting them from Pearson's misconduct. The same is true here.

On May 4, 2018, the defendants gave the plaintiff a 105-day sanction after finding the plaintiff guilty of three "Major Infractions" against institutional security and property: disrespect (§303.29), disruptive conduct (§303.33) and misuse of state or federal property (§303.39). Dkt. No. 14-1 at 4. This was the fifth time in just over three months that the plaintiff had been found guilty of committing "Major Infractions." Id. Given the number, frequency and nature of the violations, the plaintiff cannot state a claim under the Eighth Amendment based on his assertion that the defendants' denying him out-of-cell recreation for 105 days was not proportional or that the sanction was so severe "that it is intolerable to the sensibilities of a civilized society." Pearson, 237 F.3d at 885.

The same is true for the three other occasions the defendants approved 105-day penalties. On each of those occasions, the plaintiff was found guilty of a "Major Infraction" against "bodily security." Specifically, the plaintiff was found guilty of sexual conduct (§303.14). Dkt. No. 14-1 at 4-5. While the court does not know what the plaintiff did, the plaintiff concedes that he has a "history with female staff members." Dkt. No. 14 at 6. The first time the plaintiff was found guilty of this violation, he received only a ninety-day penalty. Dkt. No. 14-1 at 4. It was only when the plaintiff repeated the misconduct that the defendants approved 105-day penalties. Based on these

circumstances, the court cannot reasonably infer that the penalties the defendants imposed were cruel and unusual.

The plaintiff argues that none of the violations occurred during out-of-cell recreation, but where and when the violations occurred is less relevant than the nature of the violations. The plaintiff was found guilty of disruptive behavior, disobeying orders, sexual conduct and stalking (among other things). Allowing him to interact with other inmates and staff outside of his cell would have provided him further opportunities to engage in disruptive behavior. As the Seventh Circuit observed, limiting the movement and interactions of an inmate who has shown an unwillingness or inability to control his actions is a reasonable method of protecting staff and other inmates.

The plaintiff also argues that, according to policy, the available sanctions for the violations he committed was a maximum of eight days loss of out-of-cell recreation and zero to ninety days of disciplinary segregation. Dkt. No. 14 at 4. The document the plaintiff provided, however—DAI Policy #303.00.04—does not support this assertion. Dkt. No. 14-1 at 1-3. The policy specifies the "base" disciplinary separation (DS) penalties for major infractions. DAI Policy #303.00.04(IX). Dkt. No. 1-14 at 2. While the plaintiff is correct that some of the violations for which he was convicted—assault on an employee, for example, and soliciting an employee—had base penalties of zero to ninety days of DS [disciplinary segregation],[1] id., the policy provides that "[b]ase penalties

_____

[1] Others had lesser base penalties—sexual conduct (zero to thirty days), threats (zero to sixty days), stalking (zero to sixty days), disobeying orders (zero to thirty days), disrespect (zero to thirty days), disruptive conduct (zero to sixty

12

may be enhanced or mitigated due to the various factors outlined in Section X and XI," DAI Policy #303.00.04(VII)(C), dkt. no. 1-14 at 2. Some of the enhancing factors listed in Section XI of the policy include "[t]he inmate has a history of committing the same or similar conduct in the last 12 months," "[i]ntent," "[s]everity of the actions," "[i]mpact of actions on others" and "[r]isk to staff." DAI Policy #303.00.04(XI), dkt. no. 1-14 at 2-3. This means that the "base" penalties are just that—"base" penalties, which prison staff may enhance when an inmate repeats conduct or when the conduct is aggravated.

The same is true for non-disciplinary segregation policies like loss of out-of-cell recreation. Under the policy, "minor penalties" include suspension of recreation privileges of "[o]ne to eight days for inmates in DS." DAI Policy #303.00.04(IV)(A)(2)(b). Id. at 1. Section 303.00.04(V)(A)(1)(g) of the policy says that for "major penalties," an inmate's release date may be extended for inmates in DS who lose their out-of-cell recreation privileges for more than eight days. Id. at 1-2.

Even if any of the dispositions the defendants imposed on the plaintiff violated Policy #303.00.04 or other prison policies, violation of a prison policy does not itself give rise to a claim under the Constitution. Schroeder v. Sawall, 747 F. App'x 429, 431 (7th Cir. 2019). The plaintiff has not stated a claim under the Eighth Amendment against Foster, Meli, Wierenga or Westra. The court will dismiss them as defendants.

---

days), misuse of federal or state property (zero to thirty days) and misuse of medications (zero to thirty days). Dkt. No. 14-1 at 2.

At this early stage in the case, however, the plaintiff has alleged that (1) he suffered from an objectively serious mental health condition and (2) Van Buren and Wojtecka were deliberately indifferent to that condition. See Wilson v. Adams, 901 F.3d 816, 820-21 (7th Cir. 2018). While the plaintiff has not explained who Van Buren and Wojtecka were, he has alleged that he asked for help for his mental health treatment and they refused. While his allegations are sparse, the court will allow the plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Van Buren and Wojtecka.

The court will enter a scheduling order setting a date for the completion of discovery after Van Buren and Wojtecka have an opportunity to respond to the amended complaint. After the court enters a scheduling order, the plaintiff may serve discovery requests on the defendants to get the documents and information he believes he needs to prove his claim.

## III. Conclusion

The court **ORDERS** that defendants Brian Foster, Anthony Meli, S. Wierenga and J. Westra are **DISMISSED** based on the plaintiff's failure to state a claim against them.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint, dkt. no. 14, and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Torria Van Buren and Marieta Wojtecka. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

14

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated in Milwaukee, Wisconsin, this 18th day of August, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**